SARAH McCALLUM, as Administratrix, etc., of WILLIAM McCALLUM, Deceased, Respondent, v. THE LONG ISLAND RAILROAD COMPANY, Appellant.

*Negligence — passenger in a street car not responsible for the negligence of the conductor or driver — statutory signals must be sounded at intervals — 2 R. S. (6th ed.), 542, sec. 61—facts not connected with the issues need not be submitted to a jury*

This action was brought to recover the damages occasioned by the death of the plaintiff's intestate by reason of the collision of a locomotive engine, belonging to the defendant, and a street car in which the intestate was riding as a passenger. The collision took place near the hour of twelve o'clock at night, at a point where the street railroad crosses the line of the railroad on which the engine was running. The evidence as to whether or not the bell of the engine was rung or the whistle sounded was conflicting. The conductor of the car in which the intestate was, and the conductor and the driver of another car approaching the railroad a block off who had their attention directed to the subject, all testified to the effect that they did not hear the signals.

*Held,* that the question was properly submitted to the jury.

That, as the intestate was a passenger upon the car, having no control over its movements and nothing whatever to do with its direction or management, the negligence of the driver or conductor was not imputable to him, and the fact that their negligence contributed with that of the defendant's engineer and fireman, in causing the accident, would not defeat the plaintiff's right to recover.*

That the intestate himself was not bound to stop, look or listen for an approaching train, but could, as a passenger, reasonably assume that proper care and attention would be given at the crossing by those in charge of the car, before an attempt would be made to go over it.

The evidence of the defendant showed that the engine stopped at Atlantic avenue, which was distant the width of three blocks and two streets from the place of the collision.

*Held,* that the court properly refused to charge that, "from the fact of the engine in question starting from Atlantic avenue, it was a sufficient compliance with the statute if this whistle was blown immediately upon or after leaving Atlantic avenue," as the statute (2 R. S. [6th ed.], 542, § 61) required that the whistle should be sounded "*at intervals* until it shall have crossed such road or street."

The court was also requested to charge that "a failure to recover, or a recovery, in no way effects the plaintiff's rights in an action against the Broadway Railroad Company."

*Held,* that it was proper to refuse so to charge.

The obligation of a railroad to keep a flagman at a station considered.

*The same rule was applied in the case of *Harvey* v. *The New York, Woodhaven and Rockaway Railroad Company*, decided at this term, but not reported. (See *post* decisions in cases not reported, First Department, January Term, 1886.)

Appeal from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Alfred C. Chapin*, for the appellant.

*P. Mitchell*, for the respondent.

Daniels, J.:

The intestate was killed on the night of the 10th of August, 1884, by a collision of a locomotive engine, belonging to the defendant, and a street car on the Broadway Horse railroad. The collision took place near the hour of twelve o'clock at night, at a point where the Broadway Street railroad crosses the New York and Manhattan Beach railroad, in East New York, on Long Island. The engine struck the car as it was crossing the railroad track, carrying it, as the evidence tended to show, ninety or 100 feet from the point of collision. The intestate was a passenger in the car, and was instantly killed. The action proceeded upon the legal ground that neither of the signals required by the statute was given by the engine as it approached this crossing, and evidence was produced on behalf of the plaintiff, who is the widow of the intestate, tending to show that neither the whistle was sounded nor the bell was rung until just at the time of the happening of the collision. It has been urged, in support of the appeal, that the evidence as to this fact was so defective as not to permit the case to be submitted to the jury, for, on the part of the defendant, positive testimony was given that the whistle itself was sounded and the bell was rung until the time when the collision took place. But it is clearly a misapprehension of the plaintiff's evidence that all her witnesses were able to say was, that they did not hear either of these signals, for both the conductor of this car and the conductor and driver on a Fulton avenue car, at the same time approaching the railroad, one block distant from the railroad crossing on Broadway, had their attention directed to the fact whether trains were moving upon the railway, and they were, as they were about to cross, on the look-out for cars. The conductor on this particular car heard no whistle until the engine was about to strike it. The conductor upon the Fulton

avenue car first had his attention directed to the train by the head-light of the locomotive. The evidence of the driver on the same car was to the same effect; his attention was directed to the approach of the engine, but he heard no whistle or bell until it had passed him. This evidence was entirely different, therefore, from that given in *Culhane* v. *New York Central and Hudson River Railroad Company* (60 N. Y., 133). For there it did not appear that the witnesses, testifying that they did not hear the bell, had their attention directed in any manner to the approach, or probable approach, of a train, and the same observation is equally applicable to the case of *Chapman* v. *New York Central and Hudson River Railroad Company* (14 Hun, 484), and *McKeever* v. *New York Central and Hudson River Railroad Company* (88 N. Y., 667). These witnesses, in the course of their employment, were passing over this crossing and understood something of the movements of the trains upon the railroads, and were accordingly upon the look-out to see whether a crossing could be safely made or not, and if the bell was rung or not; and if the bell was rung or the whistle was sounded, there was certainly a decided probability that they would have heard it when they were in these positions. Besides that, the witness Smith, who was the conductor on the car in which the intestate was killed, did testify as a fact that the bell was not rung and the whistle was not sounded. These questions were propounded to him: " When did he commence to blow the whistle ?" A. " I never heard the whistle until the engine struck the car ; I turned my head as I jumped and ne blew a sharp whistle." Q. " Was there a whistle or a bell rung before that ?" A. " No, sir." There was a conflict, therefore, decidedly in the evidence concerning these facts and the determination of that conflict was an appropriate subject for the decision of the jury.

Evidence was also given tending to prove that the driver and the con ductor of the street car had not been sufficiently on the watch for the approach of the engine, for it appeared that the car had commenced to cross the railroad at the time when the engine was discovered. But if it should be held that both the driver and the conductor of the street car were negligent in this particular, it would not prevent the plain-

tiff from maintaining her action, for it was proved that the intestate, although himself a car conductor, was at this time a passenger on this car. He had no control over its movements, and nothing whatever to do with its direction or management, but that was wholly committed to the driver and conductor, and if they, as well as the engineer and fireman on the defendant's engine, were chargeable with negligence that would not prevent the plaintiff from maintaining this action, for she might then have an action for damages against either or both of the railway companies. (*Dyer* v. *Erie Ry. Co.*, 71 N. Y., 228.) The point was taken at the close of the trial that the intestate himself was bound to stop, look or listen for an approaching train, but no obligation of that description was imposed upon him by law. He was a passenger, and as such could reasonably assume that proper care and attention would be devoted to the crossing by those in charge of the car, before an attempt was made to go over it. It was not for him to stop, look or listen, but for the persons who had charge of the vehicle in which he was being carried, and if they failed to do that, as due care requires them to do it, and by reason of that failure and the carelessness of the persons in charge of the engine the accident happened, the defendant itself may be held liable for the consequences.

Proof was also given, on behalf of the plaintiff, that the engine was running at an unusually high rate of speed, it was described by the driver on the Fulton avenue car as an "enormous speed," going faster than any other engine he had ever seen before. That was denied on behalf of the defendant, whose witnesses testified that the speed was very moderate, and not exceeding about fifteen miles an hour. Which of the witnesses was right in the testimony concerning the speed of the engine was for the jury to decide, for still other witnesses testified, on behalf of the plaintiff, that the engine was moving at a high rate of speed. In this connection the court stated to the jury that the rate of speed was a fact they might consider in connection with the testimony, that there was no flagman and no gate at the crossing, and with the testimony as to the ringing of the bell and the blowing of the whistle. But it was added, then, that this could only be done "for the purpose of determining whether the railroad company acted with ordinary prudence in the running of its trains." This was no more than directing the atten-

tion of the jury to the facts and circumstances which were incident to the management of the railroad at the time, for them to determine whether negligence had been established against the defendant. For it was further added that "the question of speed is only a circumstance to be taken into consideration in connection with the other evidence," and "there is, moreover, no law either on the statute books or otherwise, that makes it the duty of a railway company to keep a flagman at a crossing, or to have a gate there." But the omission of these precautions was referred to as a fact indicating the necessity for the observance of care in giving one or more of the statutory signals, and in order to avoid a misapprehension on this subject, it was further added by the judge that "it is not for the jury to say that the railroad company must have a flagman, or that they must have a gateman, and that if they do not have these the company is necessarily negligent. It is only a circumstance to be taken into consideration with the other evidence. The duty of the jury, upon all the evidence, is to decide whether the employees of the railroad acted with ordinary care and prudence in the running of this engine." These points were afterwards brought up again by special requests for further instructions to the jury, when they were again directed that "there has not been shown any obligation upon the defendant, at the time of the collision, to have any flagman stationed at the Broadway crossing," and that "the jury must not consider as constituting negligence the absence of a gate or flagman at the Broadway crossing at the time of the accident." These additional statements were clearly sufficient to guard the jury against any possible misapprehension concerning the effect of the omission to maintain a flagman or gate, and to wholly confine them to the conduct of the persons having charge of the engine. The evidence on the part of the defendant showed that the engine stopped at Atlantic avenue, which was distant the width of three blocks and two streets from the point of the collision. And the court was requested to charge that, "from the fact of the engine in question starting from Atlantic avenue, it was a sufficient compliance with the statute, if this whistle was blown immediately upon or after leaving Atlantic avenue." The court declined and the defendant excepted. This refusal to charge was justified by the

provision of the statute that the whistle, when that signal shall be relied upon, shall be sounded at intervals until it shall have crossed such road or street. (2 R. S. [6th ed.], 542, § 61.) Merely sounding the whistle, therefore, as the engine was starting from Atlantic avenue, was not a compliance with this direction of the statute, and this request to charge was rightly refused. The sixth, seventh, eighth and ninth requests, relating to the management of the car in which the intestate was a passenger, and the conduct of the driver and its conductor, as has already been observed, were rightfully refused, as the defendant will not be relieved from liability, even if these persons could have seen the distance of 300 feet from the crossing in the direction in which the engine was approaching and failed to discover it, or otherwise negligently conducted themselves, as long as the intestate was no party to the failure, and had no knowledge of such misconduct. The court was also requested to charge that "a failure to recover, or a recovery, in no way affects the plaintiff's rights in an action against the Broadway Railroad Company." That was very properly refused, for the fact had no connection whatever with the trial of this case, or the disposition which the jury should make of it on the evidence submitted to them.

It appeared upon the cross-examination of the engineer that he had been arrested and indicted for his conduct in causing this collision, but no exception whatever was taken to this evidence, as it was given by the engineer himself; and when the inquiry was made of the witness Howard, where an exception was taken to the ruling that he might answer as to this fact, his evidence was in the negative, and, therefore, in no manner prejudicial or injurious to the defendant.

As the evidence was given, the facts in the case, on which the liability of the defendant depended, were for the consideration and decision of the jury. (*Kavanaugh* v. *Wilson*, 70 N. Y., 177; *Sherwood* v. *Hauser*, 94 id., 626.) The case appears in all respects to have been carefully, as well as correctly, tried at the circuit, and no error to the prejudice of the defendant intervened, and the judgment, as well as the order from which the appeals have been taken, should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment and order affirmed.